IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



MAR 8 2019

Clerk, U S District Court
District Of Montana
Billings

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MAURICE JOSEPH FREGIA,<br><br>Defendant. | CR 18-58-BLG-SPW-1<br><br>ORDER |

Before the Court is Defendant Maurice Joseph Fregia's motion to suppress evidence obtained from a search of his cell phone, cell-site location information, and residence. (Doc. 69). The matter was submitted on the briefs and exhibits because the issues involve purely legal questions. For the following reasons, the Court denies the motion.

I.  Facts

Armed with a search warrant, members of the Eastern Montana High Intensity Drug Trafficking Area task force were searching a Billings motel room in late January 2018 when they came across a cell phone containing text messages from an apparent methamphetamine supplier. The task force identified the alleged supplier as Chad Beres and obtained a search warrant for his cell phone. Beres'

1

cell phone revealed evidence of methamphetamine trafficking and implicated Maurice Fregia as an associate supplier.

Around the same time, the task force received information from an alleged methamphetamine distributor named Christopher Hurst that Fregia was Hurst's source of supply. Hurst stated he received up to a half pound of methamphetamine per day from Fregia. From Hurst, the task force obtained phone numbers allegedly belonging to Beres and Fregia.

Based on affidavits of probable cause, the task force was granted orders from a state judge authorizing the use of pen registers and trap and trace devices on two numbers believed to be Fregia's. (Docs. 70-1, 70-2, 70-3, 70-4). The orders stated they applied without geographic limitation and authorized the task force to obtain cell-site location information (CSLI). (Docs. 70-2 and 70-4). Using information gleaned from the pen registers and trap and trace devices and Fregia's CSLI, as well as other information gathered during the investigation, the task force was granted a search warrant for Fregia's Verizon Wireless phone records, including stored text messages. (Docs. 70-5 and 70-6). Based on the information from the pen registers and trap and trace devices, the CSLI, the phone records obtained from Verizon Wireless, and other information, the task force was granted a search warrant for Fregia's residence, where they seized over a pound of methamphetamine, firearms, and cash. (Docs. 70-7, 70-8, and 70-9).

## II. Standard of review

On a motion to suppress, the Ninth Circuit reviews legal conclusions de novo and factual findings for clear error. *United States v. Basher*, 629 F.3d 1161, 1167 (9th Cir. 2011).

## III. Discussion

Fregia argues the pen register and trap and trace orders failed to comply with the requirements of state law, were therefore illegal, and the subsequent search warrants issued for Fregia's phone records with Verizon Wireless and Fregia's residence are tainted as fruit of the poisonous tree. The Court disagrees because the pen register and trap and trace orders were valid search warrants under the Fourth Amendment.

It takes some unpacking of Montana law to understand Fregia's argument. A pen register is a device which identifies a phone's outgoing calls whereas a trap and trace device identifies a phone's incoming calls. Mont. Code Ann. §§ 46-4-401(1-2). A judge may issue an order for a pen register and trap and trace device upon finding a prosecutor's sworn application contains probable cause. Mont. Code Ann. § 46-4-403(1-2). The order must include its geographic limits. Mont. Code Ann. § 46-4-403(2)(c). The statutes do not explicitly authorize the government to obtain cellphone location information using pen registers or trap

and trace devices. But § 46-5-110 provides the government may obtain cellphone location information with a search warrant issued by a duly authorized court.

Fregia has two issues with the orders authorizing pen registers and trap and trace devices. First, Fregia argues the orders were issued without geographic limitation in violation of § 46-4-403(2)(c). Second, Fregia argues the orders authorized the task force to obtain CSLI, which is not provided for in the statute. However, an analysis of whether the orders complied with Montana law is unnecessary because in federal court evidence will not be excluded when it is tainted solely under state law. *United States v. Becerra-Garcia*, 397 F.3d 1167, 1173 (9th Cir. 2005). To be excluded in federal court, the evidence must violate either the Constitution or a federal law that provides for suppression as a remedy. *Becerra-Garcia*, 397 F.3d at 1173.

Here, the task force did not violate the Constitution when it obtained Fregia's CSLI. Under the Fourth Amendment, the task force was required to get a warrant supported by probable cause before it could obtain Fregia's CSLI. *Carpenter v. United States*, 128 S.Ct. 2206, 2221 (2018). A warrant has four general requirements: (1) a neutral and disinterested magistrate; (2) sworn affidavits; (3) probable cause; and (4) a particular description of the things to be seized or the place to be searched. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). Fregia does not contest the state court's orders authorizing the pen register and trap

4

and trace devices met these requirements. The task force's search of his cellphone location information was therefore constitutional under the Fourth Amendment because it was conducted pursuant to a valid warrant. *Carpenter v. United States*, 128 S.Ct. at 2221.

DATED this 7th day of March, 2019.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge